UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINALD McGHEE,

           Plaintiff,                  CIVIL ACTION NO. 09-13695

        v.                       DISTRICT JUDGE PAUL D. BORMAN

COUNTRY FRESH, LLC,         MAGISTRATE JUDGE MARK A. RANDON

           Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 8)**

      Plaintiff Reginald McGhee ("Plaintiff") commenced this action in the Circuit Court of Genesee County, filing a Complaint alleging that he was unlawfully terminated by Defendant Country Fresh, LLC ("Country Fresh") because of his race and/or that he was unlawfully retaliated against for filing an Equal Employment Opportunity Commission ("EEOC") claim, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and Michigan's Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*.  Country Fresh timely removed the case to this Court based upon subject matter jurisdiction.

      Presently before the Court is Country Fresh's motion for summary judgment, filed on May 24, 2010 (Dkt. No. 8).  Plaintiff initially responded to Country Fresh's motion for summary judgment with a Rule 56(f) motion asking for a continuance and requesting further discovery (Dkt. No. 10). Country Fresh filed a response to Plaintiff's Rule 56(f) motion on June 29, 2010 (Dkt. No. 13), the Court held a hearing on July 1, 2010.  The Count found Plaintiff's Rule 56(f) motion to be

well-taken, and permitted the parties to conduct further discovery before ruling substantively on Country Fresh's motion for summary judgment.

Discovery is now closed and Country Fresh's motion for summary judgment has been fully briefed, with Plaintiff filing a response on December 10, 2010 (Dkt. 19) and Country Fresh filing a reply on December 17, 2010 (Dkt. 20). For the reasons set forth below, the undersigned finds that Country Fresh's motion for summary judgment should be **GRANTED** and that Plaintiff's Complaint should be dismissed, with prejudice.

## I. FACTUAL BACKGROUND

Plaintiff, an African-American male, began working full-time for Country Fresh in October of 1998, as a utility worker at Country Fresh's Flint plant (Dkt. No. 8, Ex. 1; Deposition of Plaintiff at 30). Plaintiff's job duties included loading "Bossy" carts[1] onto milk delivery trucks (*Id.* at 33). Plaintiff was the subject of numerous disciplinary actions during his employment with Country Fresh and, indeed, was terminated from Country Fresh on three separate occasions (*Id.* at 41). Specifically, Plaintiff was first terminated in 2007 for violating Country Fresh's attendance policy (*Id.* at 41). Plaintiff was reinstated by Country Fresh only after Plaintiff's Union helped determine that the last of Plaintiff's series of attendance violations may have been caused by a malfunctioning time clock (*Id.* at 57-59, 73).

Plaintiff was terminated by Country Fresh a second time on January 16, 2008, for abuse of company time. On this occasion, Plaintiff was alleged to have not punched out on the time clock, and was observed sitting and conversing with his colleague while taking an extended break (*Id.* at

---

[1] A "Bossy" is a rolling stainless steal cart that is rolled directly from delivery trucks into grocery store coolers so the gallons of milk can be taken out by customers.

73-80). Plaintiff disputed that he did anything improper (*See* Dkt. 19; Ex. I; Affidavit of Plaintiff ¶¶ 8-19). With the advocacy of his Union, Plaintiff was again reinstated (Dkt. 8; Ex. 1; Deposition of Plaintiff at 73-80). However, this reinstatement was contingent upon Plaintiff signing a Last Chance Agreement (Dkt. 8; Ex. 2; Notice of Discipline and related documents; Dkt. 8; Ex. 3; Last Chance Agreement). In regards to this second termination, Plaintiff filed a Title VII EEOC charge against Country Fresh, alleging that he was not guilty of the time theft, for which he was terminated, but rather that he was the subject of racial discrimination (Dkt. 8; Ex. 4; EEOC Charge).

On February 27, 2008, Plaintiff – as well as his Union representative – signed a Last Chance Agreement. The Last Chance Agreement was to last for one year, and stated that Plaintiff would be subject to immediate termination, should he violate any further company rules (Dkt. 8; Ex. 3; Last Chance Agreement). The Last Chance Agreement also stated that Plaintiff "recognize(s) the circumstances related to the Notice of Discipline dated January 16, 2008 fully warrant his termination for his violation of the Work Rules..." (*Id.*) The next day (February 28, 2008), Plaintiff voluntarily rescinded his EEOC charge against Country Fresh and the Michigan Department of Civil Rights ("MDCR") dismissed the charge as having been "resolved" (Dkt. 8; Ex. 4; EEOC Withdrawal).

Over the following months, Plaintiff had at least one attendance violation which could have resulted in his immediate termination under the Last Chance Agreement: Plaintiff was late for work in August of 2008 (Dkt. 8; Deposition of Plaintiff at 209-212). Country Fresh chose not exercise its right to terminate Plaintiff for this or any other post-Last Chance Agreement attendance violation.

Plaintiff was, however, terminated for a third – and final – time for violating Country Fresh's safety standards on two further occasions. On August 22, 2008 and August 23, 2008, Plaintiff was

found to have improperly loaded diary products, creating a hazardous situation. Specifically, Plaintiff loaded the delivery trucks without the minimum required number of safety bars. Furthermore, Plaintiff improperly loaded 2% milk instead of skim milk onto a delivery truck, causing Country Fresh to incur additional costs in providing the correct product to its client (Dkt. 8; Ex. 1; Deposition of Plaintiff at 125-130, 137-140 and Ex. 5 Notice of Discipline and related documents). Country Fresh terminated Plaintiff on September 10, 2008, determining that Plaintiff violated the terms of his Last Chance Agreement (*Id.*).

Following his final termination, Plaintiff again filed a Title VII EEOC charge with the MDCR, alleging disparate treatment and retaliation (Dkt. 8; Ex. 6; Second EEOC Charge). The MDCR investigated the allegations, only to find insufficient evidence to support Plaintiff's charge *(Id.)*. Consequently, the MDCR dismissed Plaintiff's complaint on January 5, 2009.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3rd Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. If

-4-

the moving party can make such a showing, then the burden shifts to the nonmoving party to present evidence that a genuine fact issue exists and a trial is necessary. *Id.* at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. *Id.* at 251-52.

### III.  ANALYSIS

In his Complaint (Dkt. No. 1), Plaintiff alleges that Country Fresh discriminated against him because of his race, and/or terminated him in retaliation for his filing an EEOC claim regarding this alleged discrimination. Country Fresh argues that summary judgment on both of these claims is proper.

#### A.  *Title VII and ELCRA Framework*

Both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Elliott-Larsen Civil Rights Act, MCL § 37.2201 *et seq.* ("ELCRA") prohibit race-based discrimination in the workplace. *See* 42 U.S.C. § 2000e-2(a)(1); MCL § 37.2202(1)(a). A plaintiff must offer "direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir.

2003).  Plaintiff need satisfy only one of these (direct or circumstantial) requirements to survive a summary judgment motion.  *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348-49 (6th Cir. 1997).

Direct evidence is that "'which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Johnson,* 319 F.3d at 865 (quoting *Jaclyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).  "Consistent with this definition, direct evidence of discrimination does not require a fact-finder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of a protected group."  *Id*. at 865; *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000) (noting that "a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent").  When a plaintiff can cite direct evidence of discrimination, the burden-shifting framework articulated in *McDonnell Douglas* is not applicable.  *See Lindsay v. Yates*, 498 F.3d 434, 440 n. 7 (6th Cir. 2007).  Plaintiff has not presented direct evidence of discrimination in this matter.

Proceeding then to the *McDonnell Douglas* burden-shifting framework for circumstantial evidence, as relevant here, Plaintiff must first establish a *prima facie* case by showing that: (1) he was a member of a protected class; and (2) for the same or similar conduct he was treated differently than a similarly-situated person outside of that class.  *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).  The same general framework applies to Plaintiff's state law ELCRA claims.  *See Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) (noting that "claims of alleged race discrimination brought under the Elliot-Larsen Act under the same standards as claims of race discrimination brought under Title VII").

-6-

If Plaintiff establishes a *prima facie* case, a presumption that Defendant discriminated against Plaintiff arises, and Defendant then bears the burden of putting forth a "legitimate, nondiscriminatory reason" for the complained of adverse treatment.  *See Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007) (citation omitted).  If Defendant satisfies this burden, the presumption of discrimination disappears, and Plaintiff must show that Defendant's proffered nondiscriminatory reason was a pretext for discrimination.  *Id.* at 706-07.  Throughout this burden-shifting framework, Plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, that he suffered illegal discrimination.  *Id.* at 707.

Similarly, to establish a *prima facie* case on his unlawful retaliation claim, Plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) the employer knew of the exercise of the protected right; (3) the employer took an adverse action against the employee; and (4) there was a causal connection between the protected activity and the adverse employment action.  *See Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008).

Country Fresh argues that Plaintiff cannot meet his burden to proffer a *prima facie* showing of discrimination, nor can Plaintiff show that the legitimate, non-discriminatory reasons given by Country Fresh for his termination were pretextual.  Country Fresh's arguments are well-taken.

### B.  Plaintiff Cannot Establish A *Prima Facie Case*

Concerning Plaintiff's *prima facie* case, Country Fresh argues that Plaintiff cannot identify any similarly situated non-minority individual who was treated more favorably than Plaintiff.  In response to Country Fresh's motion for summary judgment, Plaintiff points to six individuals that he claims were similarly situated to him, but treated more favorably (Dkt. 19 at 8-9).  In particular, Plaintiff argues that six Country Fresh employees were given Last Chance Agreements, but only after

-7-

being found guilty of "significantly more egregious conduct than" Plaintiff (*Id.*).  In this regard, Plaintiff is apparently arguing that he should never have been given a Last Chance Agreement in the first place.  In other words, Plaintiff avers that he was only required to sign the Last Chance Agreement because he filed an EEOC claim against Country Fresh, and not because of the misconduct (theft of company time) of which he was accused.

However, the Last Chance Agreement – in and of itself – does not constitute an "adverse employment action" for purposes of Plaintiff's discrimination/retaliation claims since it did not require Plaintiff to adhere to stricter rules than other employees.  *See, e.g., Molina v. Equistar Chems ., L.P.*, 2006 U.S. Dist. LEXIS 47075, at *28-30 (S.D. Tex., June 30, 2006) (holding that a plaintiff, who was asked to attend a meeting with his supervisors and given a last chance agreement at that meeting, did not suffer an adverse employment action); *Mitchell v. GE Healthcare*, 2007 WL 601759 (E.D. Wis., Feb. 23, 2007) (last chance agreement not an adverse employment action as it did not subject the plaintiff to any obligations above and beyond those imposed on regular employees); *but see*, *Austin v. Haaker*, 76 F.Supp.2d 1213, 1219 (D.Kan.1999) (last chance agreement that suspended the employer's regular attendance policy materially the altered terms and conditions of the plaintiff's employment and thus constituted adverse employment action).  As such, Plaintiff does not appear to have a claim for being required to sign the Last Chance Agreement.

Additionally, and importantly, the undersigned finds that the six individuals identified by Plaintiff in his response to Country Fresh's motion for summary judgment are simply not similarly situated to Plaintiff.  To be deemed similarly situated in the disciplinary context, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without

-8-

such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Plaintiff's focus is on non-minority employees – not yet on Last Chance Agreements – but who were only required to sign Last Chance Agreements due to misconduct which was (according to Plaintiff) more severe than Plaintiff's alleged misconduct. Defendant argues – correctly, in the undersigned's opinion – that the universe of "similarly situated individuals" for purposes of Plaintiff's *prima facie* case should be non-minority employees **already on Last Chance Agreements** who again violated Country Fresh rules, yet were not terminated.

The record reflects seven employees on Last Chance Agreements during the relevant time-frame. None of them were similarly situated to the Plaintiff. Three of these employees violated their Last Chance Agreement and were terminated, including one African-American employee and two white employees. The other four employees did not violate their Last Chance Agreement – three were terminated because the plant was closed in 2009, and one was transferred (Dkt. 20; Ex. E: Defendant's Supplemental Response to Plaintiff's Request for Production of Documents Pursuant to Court Order). Simply put, Plaintiff has not identified a comparable employee who was treated more favorably than Plaintiff – Plaintiff cannot identify any employee who violated the terms of his or her Last Chance Agreement and who was not terminated.

### C. Plaintiff Cannot Show Pretext

Finally, even assuming *arguendo* that Plaintiff could establish a *prima facie* case, the record establishes a legitimate non-discriminatory basis for Plaintiff's termination. Once a plaintiff establishes a *prima facie* case, the defendant has the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment action. *See Randolph v. Ohio Dept. of Youth*

-9-

*Servs.*, 453 F.3d 724, 737 n. 4 (6th Cir. 2007) (citing *West v. Fred Wright Const. Co.*, 756 F.2d 31, 33-34 (6th Cir. 1985)).  If the defendant carries this burden of production, the plaintiff must produce evidence sufficient to persuade a reasonable jury that the reason proffered by the defendant was merely pretextual and that the actual reason was retaliation for his engaging in a protected activity. *Randolph*, 453 F.3d at 737 n. 4; *see Balmer v. HCA, Inc*., 423 F.3d 606, 615 (6th Cir. 2005). Plaintiff cannot do so in this case.

To establish pretext, Plaintiff must show "either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [his] discharge, or (3) that they were insufficient to motivate discharge." *Russell v. University of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) *see also Chen v. Dow Chemical Co.,* 580 F.3d 394, 400 n. 4 (6th Cir. 2009) (cautioning that "one [should not] lose sight of the fact that at bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination").

The record reflects that Plaintiff admitted that he was terminated "because of a misload" (Dkt. 8; Ex. 1 at 4-6).  Although Plaintiff now attempts to blame the misload on his supervisor, Plaintiff admits that he did not tell that to anyone at the time of the incident (*Id.*).  Plaintiff further admits that he received safety training, and that he did see the safety rules of Country Fresh which were in written form (Dkt. 8; Ex. 1 at 32-36).  Plaintiff also acknowledges that the diagram which he initialed (Dkt. 8; Ex. 5) indicates that there were fewer safety bars than had been required by company rules (Dkt. 8; Ex. 1 at 155-156).  Simply put, Plaintiff's conduct violated Country Fresh's Work Rules, and thus it appears that Country Fresh had a legitimate nondiscriminatory reason to find that Plaintiff violated the terms of his Last Chance Agreement and, consequently, to terminate him.

Plaintiff has failed to offer evidence to show that Country Fresh's rationale was false or a pretext for discrimination.

## IV.  CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Defendant's motion for summary judgment be **GRANTED** and that Plaintiff's Complaint be dismissed, with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  January 11, 2011

-11-

<u>Certificate of Service</u>

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, January 11, 2011, electronically.*

<u>s/Melody R. Miles</u>
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*