UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINALD McGHEE,

       Plaintiff,

                                        Case No. 09-13695

v.

                                        Paul D. Borman
                                        United States District Judge

COUNTRY FRESH, LLC,

                                        Mark A. Randon
       Defendant.                      United States Magistrate Judge

_____/

**OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S OBJECTIONS, (2) ADOPTING THE CONCLUSION OF THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, (3) GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND
<u>(4) DISMISSING THE CASE</u>**

Reginald McGhee ("Plaintiff") filed the Complaint in this matter on September 17, 2009 (Dkt. No. 1). Plaintiff alleges that his former employer, Country Fresh, LLC ("Defendant"), violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, et seq., when it terminated his employment on September 10, 2008. Specifically, Plaintiff alleges that Defendant terminated him based on his race and/or as retaliation for his filing an Equal Employment Opportunity Commission ("EEOC") claim. (Compl. ¶¶ 27-28).

Now before the Court is Defendant's Motion for Summary Judgment, filed May 20, 2010 (Dkt. No. 8). Plaintiff responded on December 10, 2010 (Dkt. No. 19), and Defendant replied on

1

December 17, 2010 (Dkt. No. 20). The Court[1] referred this matter to Magistrate Judge Mark A. Randon, who filed a Report and Recommendation ("R&R") granting Defendant's Motion on January 11, 2011. Plaintiff Objected on January 25, 2011 (Dkt. No. 22). Defendant responded on February 4, 2011 (Dkt. No. 23).

For the reasons stated below, the Court will grant in part and deny in part Plaintiff's objections, adopt the conclusion of Magistrate Judge Randon's Report and Recommendation, and grant Defendant's Motion for Summary Judgment.

## I. BACKGROUND

The relevant facts were summarized in Magistrate Judge Randon's Report and Recommendation:

> Plaintiff, an African-American male, began working full-time for Country Fresh in October of 1998, as a utility worker at Country Fresh's Flint plant (Dkt. No. 8, Ex. 1; Deposition of Plaintiff at 30). Plaintiff's job duties included loading "Bossy" carts[2] onto milk delivery trucks (*Id.* at 33). Plaintiff was the subject of numerous disciplinary actions during his employment with Country Fresh and, indeed, was terminated from Country Fresh on three separate occasions (*Id.* at 41). Specifically, Plaintiff was first terminated in 2007 for violating Country Fresh's attendance policy (*Id.* at 41). Plaintiff was reinstated by Country Fresh only after Plaintiff's Union helped determine that the last of Plaintiff's series of attendance violations may have been caused by a malfunctioning time clock (*Id.* at 57-59, 73).
>
> Plaintiff was terminated by Country Fresh a second time on January 16, 2008, for abuse of company time. On this occasion, Plaintiff was alleged to have not punched out on the time clock, and

---

[1] This case was originally before United States District Judge John Feikens. It was reassigned on November 24, 2010, to United States District Judge Paul D. Borman.

[2] A "Bossy" is a rolling stainless steal cart that is rolled directly from delivery trucks into grocery store coolers so the gallons of milk can be taken out by customers.

was observed sitting and conversing with his colleague while taking an extended break (*Id*. at 73-80). Plaintiff disputed that he did anything improper (*See* Dkt. 19; Ex. I; Affidavit of Plaintiff ¶¶ 8-19). With the advocacy of his Union, Plaintiff was again reinstated (Dkt. 8; Ex. 1; Deposition of Plaintiff at 73-80). However, this reinstatement was contingent upon Plaintiff signing a Last Chance Agreement (Dkt. 8; Ex. 2; Notice of Discipline and related documents; Dkt. 8; Ex. 3; Last Chance Agreement). In regards to this second termination, Plaintiff filed a Title VII EEOC charge against Country Fresh, alleging that he was not guilty of the time theft, for which he was terminated, but rather that he was the subject of racial discrimination (Dkt. 8; Ex. 4; EEOC Charge).

On February 27, 2008, Plaintiff – as well as his Union representative – signed a Last Chance Agreement. The Last Chance Agreement was to last for one year, and stated that Plaintiff would be subject to immediate termination, should he violate any further company rules (Dkt. 8; Ex. 3; Last Chance Agreement). The Last Chance Agreement also stated that Plaintiff "recognize(s) the circumstances related to the Notice of Discipline dated January 16, 2008 fully warrant his termination for his violation of the Work Rules . . ." (*Id*.) [The agreement also recharacterized the second discharge to an "unpaid suspension" beginning January 16, 2008 and ending February 21, 2008.] The next day (February 28, 2008), Plaintiff voluntarily rescinded his EEOC charge against Country Fresh and the Michigan Department of Civil Rights ("MDCR") dismissed the charge as having been "resolved" (Dkt. 8; Ex. 4; EEOC Withdrawal).

Over the following months, Plaintiff had at least one attendance violation which could have resulted in his immediate termination under the Last Chance Agreement: Plaintiff was late for work in August of 2008 (Dkt. 8; Deposition of Plaintiff at 209-212). Country Fresh chose not to exercise its right to terminate Plaintiff for this or any other post-Last Chance Agreement attendance violation.

Plaintiff was, however, terminated for a third – and final – time for violating County Fresh's safety standards on two further occasions. On August 22, 2008 and August 23, 2008, Plaintiff was found to have improperly loaded dairy products, creating a hazardous situation. Specifically, Plaintiff loaded the delivery trucks without the minimum required number of safety bars. Furthermore, Plaintiff improperly loaded 2% milk instead of skim milk onto a delivery truck, causing Country Fresh to incur additional costs in providing the correct product to its client (Dkt. 8; Ex. 1; Deposition of Plaintiff

3

> at 125-130, 137-140 and Ex. 5 Notice of Discipline and related documents). Country Fresh terminated Plaintiff on September 10, 2008, determining that Plaintiff violated the terms of his Last Chance Agreement (*Id.*).

(R&R at 2-4).

When Defendant filed the instant Motion for Summary Judgment, Plaintiff responded by filing a motion pursuant to Federal Rule of Civil Procedure 56(f)[3], contending that Defendant should be compelled to answer certain discovery requests before Plaintiff was required to respond to summary judgment. The Magistrate Judge granted Plaintiff's Motion on September 8, 2010, ordering that Plaintiff's reply was due by December 10, 2010, and compelling Defendant to reply to certain discovery requests. (Order at 4, Dkt. No. 16). However, in the same Order, the Magistrate Judge limited Plaintiff's discovery in part. While Plaintiff had requested "documents *prior to* the issuance of last chance agreements of other employees[,]" (Pl.'s Obj. 2) (emphasis added), the Magistrate Judge ordered Defendant to produce "any and all Last Chance Agreements . . . entered into between September 10, 2006 and September 10, 2008 and any *subsequent* disciplinary records related to the employees named in those last chance agreements." (Order at 4) (emphasis added).

After granting Plaintiff's Motion under 56(f), Defendant provided the additional discovery as ordered. Plaintiff then responded to Defendant's Motion for Summary Judgment. The Magistrate Judge subsequently filed a Report and Recommendation granting Defendant's Motion for Summary Judgment. Now before the Court are Plaintiff's Objections to the Magistrate Judge's Report and Recommendation.

## II. STANDARD OF REVIEW

---

[3]The Federal Rules of Civil Procedure were amended on December 1, 2010, which reordered Fed. R. Civ. P. 56(f) to subsection (d).

When a party objects to a portion of a Magistrate Judge's report and recommendation, the Court must review that portion *de novo*. Fed. R. Civ. P. 72(b).

Defendant has moved for summary judgment under Federal Rule of Civil Procedure 56(c). "Summary judgment is proper when, viewing the facts and drawing all inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law." *Harris v. Metropolitan Gov't of Nashville and Davidson County, Tenn.*, 594 F.3d 476, 482 (6th Cir. 2009).

### III. ANALYSIS

Plaintiff raises two objections: (1) that the Magistrate Judge's September 8, 2010 Order improperly limited discovery, and (2) that the Magistrate Judge erred in finding that a Last Chance Agreement is not an adverse employment action.

**A. The Magistrate Judge's Order Regarding Discovery**

Plaintiff contends that "[t]he Magistrate has barred [him] from discovery of crucial records for producing comparable employees, disciplines and circumstantial evidence." (Pl.'s Obj. at 1).

Federal Rule of Civil Procedure 72(a) provides that, where nondispositive issues are decided by a magistrate judge, a party has 14 days to file objections after being served with the order. "Failure to appeal a magistrate judge's order to the district court pursuant to the rule waives the claim that the magistrate judge erred." *Pinkerton's Inc. v. Shelly Pinkerton Corp.*, 191 F.3d 453 (6th Cir. 1999). Orders limiting discovery are nondispositive issues. *United States v. Collis*, 875 F. Supp. 401, 401 (E.D. Mich. 1995).

The Magistrate Judge's Order limiting discovery was filed on September 8, 2010. Plaintiff did not file the instant objections until January 25, 2011. Reviewing the Magistrate Judge's Order

would therefore be "untimely and inappropriate." *Id*. *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."). Plaintiff's objections regarding the Magistrate Judge's discovery order are thus denied.

**B.  Adverse Employment Action**

Plaintiff's second objection is that the Magistrate Judge erred in finding that the Last Chance Agreement did not constitute an adverse employment action. (R&R at 8-9). Because Plaintiff has timely objected to this issue, and because it relates to Defendant's dispositive motion, the Court reviews the issue *de novo*. Fed. R. Civ. P. 72(b).

Both Title VII and the ELCRA prohibit racial discrimination in the workplace. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999). Because Plaintiff has no direct evidence of discrimination in this case, the Court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This applies to Plaintiff's claims of racial discrimination under both Title VII and the ELCRA. *Jackson* 191 F.3d at 658. Under this framework, Plaintiff has the initial burden to show a *prima facie* case of retaliation. *Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). By establishing a *prima facie* case, Plaintiff creates a rebuttable presumption of discrimination, and Defendant must come forward with a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If Defendant puts forward a nondiscriminatory reason, the burden shifts back to Plaintiff, who must show that the proffered nondiscriminatory reason is pretextual. *Id*.

*1*. Prima Facie *Case*

Plaintiff has alleged both discrimination and retaliation under Title VII and the ELCRA. Federal Title VII precedent is relevant when evaluating ELCRA claims on summary judgment.

6

*Conti v. American Axle and Mfg., Inc.*, 326 Fed. Appx. 900 (6th Cir. 2009).

To state a *prima facie* case of discrimination, Plaintiff must show that he "(1) is a member of a protected group, (2) suffered an adverse employment action, (3) was qualified for the position, and (4) was replaced by a person outside of the protected class or was treated differently from similarly situated members of the unprotected class." *Michael*, 496 F.3d at 593.

To state a *prima facie* case of retaliation under Title VII, a plaintiff must show (1) that an adverse employment action was taken, (2) that the affected employee had engaged in protected activity, (3) that the employer knew of the protected activity, and (4) that there is a causal connection between the protected activity and the adverse action. *See Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). A more liberal standard applies when analyzing adverse employment actions under the retaliation provision, because "[t]he retaliation provision . . . protects employees from conduct that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id*. (citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Still, a "*de minimus*" employment action "[is] not materially adverse and, thus, not actionable." *Bowman v. Shawnee State University*, 220 F.3d 456, 462 (6th Cir. 2000) (citation omitted). "[P]etty slights, minor annoyances, and simple lack of good manners" by employers are not actionable. *Burlington Northern*, 548 U.S. at 68.

The Magistrate Judge found that the Last Chance Agreement "does not constitute an 'adverse employment action' for purposes of Plaintiff's discrimination/retaliation claims since it did not require Plaintiff to adhere to stricter rules than other employees." (R&R at 8). However, the Last Chance Agreement provided that "[Plaintiff] is subject to immediate termination at the suspension level of the Attendance Policy." (Def.'s Mot. Ex. 3 - LCA). The agreement also provided that

Plaintiff could be immediately terminated "if he violates *any* Work Rule, the Dean Foods Code of Ethics, or the Collective Bargaining Agreement." (*Id*) (emphasis added).  Viewing this agreement in a light most favorable to Plaintiff, the Court finds that it could dissuade "a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68. *See Michael*, 496 F.3d at 596 (finding that placing employee on a 90-day "performance improvement plan" constituted an adverse employment action under Title VII's retaliation provision); *see also Hill v. Nicholson*, 383 Fed. App'x. 503 (6th Cir. 2010):

> [The defendant's] actions had the effect of imposing heightened scrutiny on [the plaintiff] while simultaneously reducing the number of mistakes which he was allowed to a mere fraction of what the previous standards had permitted.  In doing so. [the defendant] created an environment in which [the plaintiff] was constantly exposed to the risk of failure, and a reasonable employee might understandably choose to forgo filing a complaint rather than be exposed to such conditions.

*Id*. at 513.

The Court further notes that, although sufficient for Plaintiff's retaliation claim, the Last Chance Agreement may not satisfy the slightly more demanding standard required for an adverse employment action under Plaintiff's discrimination claim. *See generally Burlington Northern*, 548 U.S. 53.  Regardless, however, Plaintiff is unable to demonstrate an issue of material fact on either claim as noted *infra* at Part 3.

*2. Nondiscriminatory Reason*

Defendant has proffered a nondiscriminatory reason for the Last Chance Agreement. Defendant contends that Plaintiff was given a Last Chance Agreement because of the "theft of time" offense that resulted in his discharge/unpaid suspension on January 16, 2008.  (Def.'s Mot. Ex. 2 - Disciplinary Notice).

8

*3. Pretext*

Because Defendant has articulated a legitimate, nondiscriminatory reason, the burden is on Plaintiff to produce evidence that Defendant's proffered reason is merely a pretext masking unlawful discrimination or retaliation. Plaintiff can demonstrate pretext by showing that Defendant's nondiscriminatory reason: "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Michael*, 496 F.3d at 597.

Plaintiff does not challenge the factual basis of Defendant's proffered reason. Plaintiff instead argues that other employees committed far more egregious acts before they were compelled to sign Last Chance Agreements. But the "Progressive Discipline Schedule" used by Defendant Country Fresh provides that employees are subject to discharge if they have a single "theft of time" violation. (Pl.'s Resp. Ex. E - LCA Records at 33). Moreover, Plaintiff's argument has no basis in fact, as another employee, Manuel Soto, was given a Last Chance Agreement for a theft of time violation on April 26, 2007. (LCA Records at 6-10). Plaintiff's contention that Mr. Soto's violation was more flagrant is without merit, as the Progressive Discipline Schedule does not distinguish between the severity or value of the theft. (LCA Records at 33). Plaintiff was thus subject to discharge after his violation, and Defendant had previously used a Last Chance Agreement as a disciplinary measure for the same type of violation. No reasonable juror could therefore find that Plaintiff's conduct was insufficient to warrant a Last Chance Agreement.

Plaintiff also contends that the actual reason he was given a Last Chance Agreement was as retaliation for his filing a civil rights complaint. But Plaintiff's argument is undermined by the time line of events leading up to the Last Chance Agreement. Plaintiff was discharged on January 16,

2008. (Def.'s Mot. Ex. 1 - McGhee Dep. at 73-74). He filed a charge with the EEOC on February 11, 2008. (McGhee Dep. at 90-91). Around February 27, 2008, Defendant allowed Plaintiff to return to work contingent on his signing a Last Chance Agreement. (Def.'s Mot. Ex. 3 - LCA). On February 28, 2008, Plaintiff withdrew his EEOC charge. (Def.'s Mot. Ex. 4 - EEOC filings). It simply does not track that, having imposed the most severe disciplinary penalty (discharge), Defendant's offer allowing Plaintiff to return to work under a less severe penalty (the Last Chance Agreement), could logically be considered retaliatory. The only reasonable explanation is that Plaintiff's union steward lobbied on his behalf and successfully convinced Defendant to allow Plaintiff to return to work, albeit under the restrictions set forth by the Last Chance Agreement.

This more logical explanation finds support in Plaintiff's deposition, from which the Court notes the following:

> Q. Okay. Doug Pacyne was the union steward who helped you get your job when you were fired the first time at Country Fresh, correct?
>
> A. Yes.
>
> Q. And you asked him to help get your job back the second time you were fired by Country Fresh, correct?
>
> A. Yes.
>
> Q. And you got along with him, correct?
>
> A. Yes.
>
> Q. And you asked him to file a grievance, right?
>
> A. Yes.
>
> Q. And did he – and he told you he filed the grievance?
>
> A. Yes.

> Q.   And when was it that you had the conversation with him? Within a day or two of your discharge on January 16, 2008?
>
> A.   It may have been a few days after.
>
> Q.   But certainly within a week, true?
>
> A.   Yes.
>
> Q.   And what did he say to you?
>
> A.   I guess there were occasions where they were supposed to sit down with the plant manager and the supervisor, and those days got adjusted due to conflicts in everyone's schedule, so I think maybe about two – well, maybe three weeks had passed before they were able to sit down and discuss the situation.
>
> Q.   But my understanding is he told you that he was going to fight to get your job back, the union was, right? He told you that?
>
> [. . . .]
>
> Q.   Well, tell us the words he used.
>
> A.   We're going to do what we can.
>
> Q.   Well, we're going to do what we can to do what?
>
> A.   To bring you back to work.

(McGhee Dep. at 88-90).

Plaintiff has failed to produce evidence creating a material issue of fact as to whether Defendant's reason for the Last Chance Agreement is pretextual. Defendant is therefore entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated above, the Court:

      (1) **GRANTS** in part and **DENIES** in part Plaintiff's Objections,

      (2) **ADOPTS** the conclusion of Magistrate Judge Mark A. Randon's Report and Recommendation,

      (3) **GRANTS** Defendant's Motion for Summary Judgment, and

      (4) **DISMISSES** the case **WITH PREJUDICE**.

IT IS SO ORDERED.


                          S/Paul D. Borman  
                          PAUL D. BORMAN  
                          UNITED STATES DISTRICT JUDGE

Dated: March 22, 2011

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 22, 2011.


                          S/Denise Goodine  
                          Case Manager